UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TERRY STAFFORD,

      Plaintiff,

vs.                                    Case No.  3:06-cv-646-J-MCR

MICHAEL J. ASTRUE[1], Commissioner of the
Social Security Administration,

      Defendant.

_____/

## MEMORANDUM OPINION AND ORDER[2]

**THIS CAUSE** is before the Court on Plaintiff's appeal of a final administrative decision denying her application for Social Security benefits.  The Court has reviewed the record, the briefs and the applicable law.  For the reasons set forth herein, it is recommended the Commissioner's decision be **REVERSED** and **REMANDED** for proceedings not inconsistent with this opinion.

## I.    PROCEDURAL HISTORY

Plaintiff protectively filed an application for Supplemental Security Income ("SSI") for a period of disability and Disability Insurance Benefits ("DIB") on September 9, 2002, alleging an inability to work since December 31, 1998. (Tr.  111-113, 550-551).  Plaintiff

_____

[1]  Michael J. Astrue became the Commissioner of Social Security Administration on February 1, 2007.  In accordance with Fed. R. Civ. P. 25(d)(1), Michael J. Astrue should be substituted as Defendant in this litigation.

[2]  The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Docs. 8 & 9).

later amended her alleged onset of disability date to April 1, 2001.  (Tr. 110).  The

Social Security Administration ("SSA") denied these applications initially and on

reconsideration.  (Tr.  69-71, 72-75, 552-54, 559-60).  Plaintiff then requested (Tr. 80)

and received a hearing before an Administrative Law Judge (the "ALJ") on October 13,

2004 (Tr. 34-68).  On March 25, 2005, the ALJ issued a decision finding Plaintiff not

disabled.  (Tr. 22-33).  On April 1, 2005, Plaintiff filed a Request for Review by the

Appeals Council.  (Tr. 7-21).  The Appeals Council denied Plaintiff's Request for

Review, thus making the ALJ's March 25, 2005 decision the final decision of the

Commissioner.  (Tr.  4-6).  Plaintiff timely filed her Complaint in the U.S. District Court

on July 14, 2006.  (Doc. 1).

## II.     NATURE OF DISABILITY CLAIM

### A.     Basis of Claimed Disability

Plaintiff claims to be disabled since April 1, 2001, due to an injury to her back

resulting in back pain, periventricular deep white matter disease with multiple

abnormalities present within her cerebral hemispheres (appearing on a magnetic

resonance imaging ("MRI") scan), migraine headaches, and seizure disorder.  (Tr. 111-

114, 129-139, 221).

### B.     Summary of Evidence Before the ALJ

#### i.     Physical and Mental Medical Evidence

Plaintiff was 48 years of age on the date of the hearing.  (Tr.  26).  She has a

high school education with work experience as a sales attendant, server, day care

worker, sales clerk, teacher's aide, order clerk, receptionist, and office helper.  Id.  The

record indicates Plaintiff suffered an injury to her back after falling through an attic in

2

1996.  (Tr. 245).  Although Plaintiff never had back surgery or additional medical care for her back injury, she continues to experience muscle spasms and pain in her back. Id.

In July 2000, Plaintiff began being treated by Charles M. Day, M.D. for her headaches and back pain.  (Tr. 458-59).  She also complained to Dr. Day that she was under stress and experiencing anxiety.  Id.  Plaintiff typically saw Dr. Day several times a month in 2000 and then mostly on a monthly basis from 2001 through February 2003, during which time Plaintiff consistently complained of chronic headaches and lower back pain, as well as anxiety.  (Tr. 285-86, 307-08, 311-12, 313-14, 332-33, 336-37, 346-47, 354-55, 357, 360-61, 380-81, 398-99, 408-09, 412-13, 417-18, 419-20, 431-32, 433-34, 435-36, 439-40, 445-46, 447-48, 451-52, 453-54, 456-57, 458-59).  On various occasions, Dr. Day noted Plaintiff's anxiety was controlled with Ativan, (Tr. 360, 361, 410-11, 412-419), and her headaches were controlled  with Fiorinal with codeine (Tr. 313-14, 346-47, 360, 412-419, 431-34).

In February 2001, Plaintiff lost consciousness while driving and she bumped the car in front of her.  (Tr. 203).  She was admitted to Baptist St. Vincents on February 2, 2001 and discharged on February 5, 2001 after receiving a neurological exam and a CT, both of which showed normal results.  (Tr. 197-205). Upon discharge, Plaintiff was instructed to undergo a neurology consultation (Tr. 203); it was unclear whether Plaintiff had experienced a seizure or whether her loss of consciousness was the result of symptoms from opiates and barbiturates found in her system.  (Tr. 203).  Plaintiff, however, reported she had experienced a similar episode in the past.  (Tr. 201).

In April 2002, Plaintiff was admitted to the Emergency Room at Orange Park

3

Medical Center after experiencing another seizure while she was at work.  (Tr. 206-220).  A CT scan taken of her brain showed abnormal results.  (Tr. 215, 344-45).

Plaintiff was diagnosed with epilepsy, dehydration, and syncope and was prescribed

Dilantin for her seizure disorder.  (Tr. 217-18).

As a result of Plaintiff's abnormal CT, Plaintiff received further evaluation and

testing at Shands Jacksonville, and an MRI performed on Plaintiff on July 15, 2002

indicated she had extensive periventricular deep white matter disease with multiple

abnormalities present within cerebral hemispheres.  (Tr. Tr. 221, 330-31).  Dr. Day later

indicated Plaintiff was being evaluated for possible multiple sclerosis ("MS") (Tr. 305),

but there is no medical evidence indicating Plaintiff was ever diagnosed with MS.

Plaintiff reported experiencing another seizure in January 2003.  (Tr. 285-86, 295-96).

Also in July 2002, Plaintiff injured her shoulder while at work.  (Tr. 328-29).

Although her pain improved and she was cleared to go back to full duty work[3], Plaintiff

continued to have pain in her shoulder, which increased each time she moved her arm

over her head (Tr. 318-19, 307-08).

In 2003 and 2004, several physicians and psychologists assessed Plaintiff's

physical residual functional capacity ("RFC") and Plaintiff's mental status, respectively.

On January 10, 2003, Dr. Reuben E. Brigely, an OBGYN specialist, performed a

physical RFC assessment on Plaintiff and diagnosed her with seizure disorder and

lower back pain.  (Tr. 237).  Dr. Brigely found Plaintiff had no exertional, manipulative,

---

[3]  Although Plaintiff went back to work for a short period of time in 2002, the ALJ determined Plaintiff had not engaged in substantial gainful activity since her alleged onset date on April 1, 2001.  (Tr. 26).

visual or communicative limitations.  (Tr. 238-41).  He did, however, opine Plaintiff should occasionally avoid climbing (Tr. 239) and should avoid concentrated exposure to hazards, such as machinery and heights (Tr. 241).  Dr. Brigely also opined the severity of Plaintiff's symptoms were consistent with the medical evidence of Plaintiff's impairments documented in the file.  (Tr. 242).

On April 21, 2003, Nicholas H. Banks, M.D., a radiologist, performed another physical RFC assessment on Plaintiff.  He diagnosed her with seizures, headaches, left shoulder and lower back pain.   (Tr. 463).  Dr. Banks found Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand and/or walk for a total of about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and that she had no limitations on the amount she was able to push and/or pull.  (Tr. 464).  Dr. Banks also found Plaintiff was occasionally limited in her ability to balance (Tr. 465) and should avoid hazards (Tr. 467).  While Dr. Banks determined Plaintiff's symptoms were attributable to a medically determinable impairment, he opined the severity of her symptoms were disproportionate to the expected severity or expected duration of such impairments.  (Tr. 458).

On September 4, 2004, Dr. Day also evaluated Plaintiff's physical RFC.  (Tr. 523-27).   Dr. Day again diagnosed Plaintiff with chronic spinal pain and seizure disorder and opined her prognosis was poor.  (Tr. 523).  He noted Plaintiff had decreased mobility in her back, Id., and that he did not believe Plaintiff to be a malingerer (Tr. 524).  Dr. Day opined Plaintiff's anxiety affected her physical condition and further opined that Plaintiff often experienced pain and other symptoms which interfered with her attention and concentration.  (Tr. 524).  Dr. Day found Plaintiff moderately limited in her ability to deal

5

with work stress.  (Tr. 525).  He also determined Plaintiff can only walk one city block without rest, continuously only sit for ten minutes at a time, stand for fifteen minutes at a time, and can sit and stand/walk for a total of two hours in an eight-hour work day.  Id. Dr. Day opined Plaintiff needs to be able to walk for five minute periods consistently throughout the day and needs to be able to shift positions at will during a work day.  Id.

According to Dr. Day, Plaintiff also needs approximately ten five minute breaks throughout an eight-hour work day, and the most weight she can ever lift is ten pounds on occasion.  (Tr. 526).  He believes Plaintiff has significant limitations in repetitive reaching and that she is likely to miss work more than three times a month.  (Tr. 527). Finally, Dr. Day opined Plaintiff's decrease in visual acuity also limits her ability to work a regular job on a sustained basis.  Id.

As noted above, several psychologists evaluated Plaintiff on various occasions. First, on January 29, 2003, Peter Knox, a licensed psychologist, performed a mental examination on Plaintiff.  (Tr. 245-50).   Plaintiff complained to Mr. Knox that she experienced chronic back pain, anxiety, and migraines.  (Tr. 245).  Mr. Knox noted Plaintiff's mood was slightly dysphoric and she had "a bland affect."  (Tr. 248).  He found her quality of thinking to be normal in that she could relate information in a rational, coherent, and sequential fashion, and further found no problem with her concentration or memory.  Id.  He noted she did not have a problem ambulating, and there were no behavioral indications of major anxiety, depression, or thought disorder at the time of the interview.  Id.

Mr. Knox diagnosed Plaintiff with generalized anxiety disorder, mild (Axis I), reported back pain, headaches, and seizure disorder (Axis III), and living and

6

occupational issues (Axis IV).  Id.  He opined her prognosis was good and evaluated

her GAF at 65.  With regard to Plaintiff's ability to work, Mr. Knox opined Plaintiff may

have some somatization issues, as Plaintiff essentially stopped her life after having a

seizure.  (Tr. 249).  He noted Plaintiff has a poor work record because she is "nervous,"

and her doctors are still running tests to find out why she experiences headaches and

seizures.  Id.  He opined, "[s]he should have the ability to do some work as she said she

worked in the past with her 'crushed vertebrae.'"  Id.

On February 6, 2003, Susan Conley, Ph. D., completed a psychiatric review

technique form for the time period from December 31, 1998 through February 6, 2003.[4]

(Tr. 251).  Dr. Conley assessed Plaintiff's medical disposition as not severe, Id., but

found she had generalized persistent anxiety, accompanied by the following three

conditions: (1) motor tension; (2) autonomic hyperactivity; and (3) apprehensive

expectation.  (Tr. 256).  In evaluating Plaintiff's functional limitations and the degree of

such limitations, Dr. Conley found Plaintiff had limitations resulting in a mild restriction of

activities of daily living, mild difficulties in maintaining social functioning, and mild

difficulties in maintaining concentration, persistence, or pace.  (Tr. 261).

Less than two months later, Gary W. Buffone, Ph. D. filled out a second

psychiatric review technique form on Plaintiff for the time period from December 31,

1998 through March 2003.  (Tr. 265-278).  Dr. Buffone's assessment of Plaintiff was

---

[4] It appears Dr. Conley mistakenly noted that her assessment of Plaintiff was from 12/31/98 to 6/03.  This ending date is incorrect, however, because Dr. Conley only completed her assessment on February 6, 2003 and thus, she could not have evaluated Plaintiff's mental status through June 2003.  Therefore, the Court assumes Dr. Conley meant to state the assessment was from 12/31/90 to 2/6/03 (the date she completed the assessment).

similar to Dr. Conley's in that he also found her medical disposition as not severe and that Plaintiff had an anxiety related disorder.  As opposed to Dr. Conley's diagnosis of a generalized persistent anxiety disorder accompanied by multiple other conditions, Dr. Buffone believed Plaintiff merely had a mild case of generalized anxiety disorder.  (Tr. 270).  He also believed Plaintiff was limited by a mild restriction on her activities of daily living and mild difficulties in maintaining concentration, persistence or pace, but he did not find any limitations in Plaintiff's ability to maintain social functioning.  (Tr. 275).

Plaintiff underwent a second mental status evaluation, conducted by George N. Maida, Ph. D., on August 30, 2004.  (Tr. 529-532).   Dr. Maida diagnosed Plaintiff with anxiety disorder with panic attacks (Axis I), migraine headaches, suspected head injury, seizure disorder, pain disorder secondary to spine injury (Axis III), and found she had occupation/recreational difficulties, but adequate family support (Axis IV).  (Tr. 532). Dr. Maida assessed Plaintiff's GAF at 50 and found her anxiety disorder somewhat limiting because it makes her apprehensive to leave her home.  Id.  He also determined Plaintiff was limited because she has difficulty comprehending relatively simple concepts and is weak in concentration.  Id. Ultimately, Dr. Maida found Plaintiff capable of working at some level, but unable to consistently work at a level that is substantial. Id.

Following his mental status evaluation of Plaintiff, Dr. Maida completed a psychiatric review technique form for the period covering February 2003 through August 30, 2004.  (Tr. 535-48).  He determined Plaintiff suffers from a generalized persistent anxiety disorder accompanied by motor tension, autonomic hyperactivity, and apprehensive expectation, along with a persistent irrational fear of a specific object,

activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation.  (Tr. 535, 540).  He further determined Plaintiff suffers from a coexisting non-mental impairment(s) that requires referral to another medical specialty (Tr. 535), and that Plaintiff has a psychological or behavioral abnormality associated with a dysfunction of the brain, as evidenced by her memory impairment.  (Tr. 536). Finally, Dr. Maida assessed Plaintiff's functional limitations and found Plaintiff moderately limited in her ability to perform her daily activities and in her ability to maintain concentration, persistence or pace, and either mildly limited or not limited at all in her ability to maintain social functioning.  (Tr. 545).

On September 7, 2004, Dr. Maida completed a Mental RFC assessment on Plaintiff, finding her markedly limited in the following four areas: (1) ability to understand and remember detailed instructions; (2) ability to maintain attention and concentration for extended periods; (3) ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; and (4) ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (Tr. 533-34).  Dr. Maida found Plaintiff either moderately limited or not significantly limited in all other categories.  Id.

### ii.    Plaintiff's Testimony at the Hearing

At the hearing, Plaintiff testified that she takes Dilantin for her epilepsy, Valium for her anxiety, and Fiorinal for her headaches.  (Tr. 47-49).  She stated she has burning back pain every day and severe migraine headaches.  (Tr. 50-51).  She also stated she lays on a heating pad for several hours a day, uses ice, and takes her

medications, but that her medications make her drowsy and slow.  (Tr. 52-53).  When

questioned about her seizures, she testified that she used to lose all consciousness

when she experienced a seizure; however, now that she takes Dilantin, she still

experiences seizures, but instead of losing consciousness, she experiences a weird

aura.  (Tr. 54-55).  After experiencing a seizure, she stated her body is physically and

mentally exhausted.  (Tr. 55).  Plaintiff further testified that she is nervous all the time

and that she has left shoulder problems which cause her frequent pain.  (Tr. 56-57).

Lastly, Plaintiff averred she has been unable, and continues to be unable, to maintain a

job because her impairments cause her to miss work more than a few days a month.

(Tr. 58)

> **C.** **Summary of the ALJ's Decision**

A plaintiff is entitled to disability benefits when she is unable to engage in

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to either result in death or last for a continuous

period of not less than 12 months.  42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. §

404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20

C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful

activity, she is not disabled.  29 C.F.R. § § 404.1520(b), 416.920(b).  Second, if a

claimant does not have any impairment or combination of impairments which

significantly limit her physical or mental ability to do basic work activities, then she does

not have a severe impairment and is not disabled.  20 C.F.R. § § 404.1520(c),

416.920(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20

C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § § 404.1520(d),

416.920(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § § 404.1520(e), 416.920(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § § 404.1520(f), 416.920(e).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  (Tr.  26, 32).  At step two, the ALJ found Plaintiff has "a seizure disorder, low back strain, left shoulder strain, and a history of migraines, impairments that are severe within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4."  (Tr. 30, 32).  The ALJ also assessed Plaintiff's anxiety and determined that it resulted in mild restrictions of daily living and mild difficulties in maintaining social functioning.  (Tr. 29).  The ALJ further determined Plaintiff had mild deficiencies of concentration, persistence, and pace, resulting in failure to complete tasks in a timely manner.  (Tr. 29-30).

Next, the ALJ assessed Plaintiff's RFC and found she retained the capacity to:

lift up to 20 pounds occasionally and ten pounds frequently, stand/walk up to six hours in an eight-hour workday, and sit up to six hours in an eight-hour workday.  In addition, [Plaintiff] cannot work at heights, on ladders, or around dangerous/moving machinery. [Plaintiff] can occasionally reach overhead with her nondominant left upper extremity due to her shoulder impairment.

(Tr. 31).  At step four, the ALJ utilized a Vocational Expert ("VE") and determined

Plaintiff's past jobs range from sedentary to light in exertion and consist of both unskilled and semiskilled work.  Id.  After posing two hypothetical questions to the VE, the ALJ determined Plaintiff could return to her past work as a server, order clerk, receptionist, and office helper.  Id.  Accordingly, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act.  Id.

## III.  ANALYSIS

### A.  The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable

to the decision.  <u>Foote</u>, 67 F.3d at 1560; <u>accord</u>, <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**B.     Issues on Appeal**

Plaintiff argues three issues on appeal.  First, Plaintiff contends the ALJ erred by failing to give substantial weight to the opinion of Plaintiff's treating physician.  (Doc.  13, pp. 13 - 14).  Second, Plaintiff argues the ALJ failed to properly evaluate Plaintiff's credibility.  <u>Id.</u> at 14-15.  Third, Plaintiff asserts the ALJ erred in assessing Plaintiff's RFC because she failed to set forth the necessary rationale and failed to reference supporting evidence.  <u>Id.</u> at 16-18.  The Court will address each of these issues below.

**1.     Whether the ALJ erred by failing to give Plaintiff's treating physician's opinion substantial weight**

Plaintiff argues the ALJ erred when she failed to give Plaintiff's treating physician's opinion substantial weight.  (Tr. 13-14).  As noted earlier, Dr. Day, Plaintiff's treating physician since 2000, evaluated Plaintiff's physical RFC and determined her prognosis is poor.  (Tr. 523).  He also noted her impairments are reasonably consistent with her symptoms and functional limitations caused by her back injury and seizure disorder.  (Tr. 523-24).  Moreover, Dr. Day opined, *inter alia,* that Plaintiff is limited to: sitting for ten minutes and standing for fifteen minutes at a time; sitting and standing about two hours in an eight-hour workday and that she needs ten, five minute breaks during an eight-hour workday.  (Tr. 526-26).  Finally, Dr. Day opined Plaintiff's impairments, on average, would cause her to miss work more than three times a month. (Tr. 527).

13

Although, in her decision, the ALJ acknowledged the limitations Dr. Day placed on Plaintiff, the ALJ disregarded Dr. Day's opinion because she believed it was not supported by Dr. Day's internal records and notes and because there were no findings in the record to support the degree of limitations Dr. Day assessed.  (Tr. 28).  Plaintiff contends the ALJ's decision to disregard Dr. Day's opinion was error, as it should have been given substantial weight since Dr. Day was Plaintiff's treating physician for several years and because the ALJ's reasoning for disregarding such opinion was faulty.  (Doc. 13, pp. 13-14).  Plaintiff further contends Dr. Day's records support his assessment of Plaintiff because they reflect Plaintiff was consistently treated for back pain, headaches, and seizure disorder and that Plaintiff suffered from anxiety and extensive deep white matter disease.  Id. at 14.

The Commissioner, on the other hand, contends the ALJ's decision to discount Dr. Day's opinion was supported by substantial evidence.  (Doc. 14, p. 6).  The Commissioner notes that Dr. Day diagnosed Plaintiff with chronic back pain and tenderness in the shoulders, but that he further noted Plaintiff's back pain was described as mild and Plaintiff had a full range of motion in her back.  Id. at 6-7.  Moreover, the Commissioner argues Plaintiff's shoulder strain appeared to be improving in 2002 and none of Dr. Day's other clinical findings are supported by the evidence.  Id. at 6-7.  Finally, the Commissioner points out that approximately eighteen months had passed between Dr. Day's September 1, 2004 functional assessment of Plaintiff and his most recent recorded examination of Plaintiff.  Id. at 6.

The opinion of a treating physician, such as Dr. Day, "'must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'"  Phillips v.

14

Barnhart, 357 F.3d 1232, 1240 (11ᵗʰ Cir. 2004) (citing, Lewis v. Callahan, 125 F.3d

1436, 1440 (11ᵗʰ Cir. 1997)).  The Eleventh Circuit has determined "good cause" exists

when the: "(1) treating physician's opinion was not bolstered by the evidence; (2)

evidence supported a contrary finding; or (3) treating physician's opinion was

conclusory or inconsistent with the doctor's own medical records."  Phillips, 357 F.3d at

1241.

　　　　If the ALJ determines a treating physician's opinion does not warrant controlling

weight, the ALJ must weigh the medical opinion based on the following six factors: the

length of the treatment relationship and the frequency of the examinations; the nature

and extent of the treatment relationship; the medical evidence supporting the opinion;

consistency with the record as a whole; specialization in the medical issues at issue;

and any other factors which tend to support or contradict the opinion.  Hurley v.

Barnhart, 385 F. Supp. 2d 1245, 1255 (M.D. Fla. 2005) (citing 20 C.F.R. § 404.1527(d)).

In any event, whenever an ALJ decides to disregard the opinion of a treating physician,

he/she must clearly articulate the reasons for so doing.  Phillips, 357 F.3d at 1241.

　　　　Here, after the ALJ set forth the relevant medical evidence, including Dr. Day's

assessment of Plaintiff's limitations, the ALJ discredited Dr. Day's opinion in one

sentence, stating it is not supported by Dr. Day's internal records or notes, nor is it

supported by any other findings in the record.  (Tr. 28).  While the ALJ was free to reject

Dr. Day's opinion, her one sentence explanation -- which is void of any examples

explaining how the record fails to support such opinion -- is insufficient.  The ALJ failed

to clearly articulate her reasoning as to why Dr. Day's own records did not support his

assessment of Plaintiff or how the remaining medical records failed to bolster his

opinion.[5]  Notably, it is incumbent upon the ALJ to specifically articulate how the record either does not support or conflicts with Dr. Day's assessment.  Cf. Phillips, 357 F.3d at1240-41 (upholding the ALJ's decision to give less weight to the treating physician's opinion because the ALJ clearly articulated how the treating physician's assessment of the plaintiff conflicted with the treating physician's notes and the plaintiff's own testimony).

Accordingly, the Court finds this case is due to be remanded and upon remand, the ALJ should reconsider Dr. Day's records and if necessary, recontact Dr. Day to seek clarification or a new report from him concerning any ambiguities the ALJ may find.  In the event the ALJ again determines Dr. Day's opinion is not entitled to substantial weight, the ALJ should clearly articulate how the evidence conflicts or fails to bolster his opinion, or how Dr. Day's opinion is inconsistent with his own medical records.

### 2.    Whether the ALJ failed to properly evaluate Plaintiff's credibility

Plaintiff next argues the ALJ failed to articulate adequate reasons for discrediting Plaintiff's pain testimony.  (Doc. 13, pp. 14-15).  In her decision, the ALJ set forth Plaintiff's testimony regarding her pain and limitations, but then found such testimony not fully credible.  (Tr. 30).  The ALJ explained her decision to discredit Plaintiff's

---

[5]  The Commissioner sets forth evidence in his Memorandum in Opposition which may lend support to the Commissioner's argument that discrepancies exist between Dr. Day's RFC assessment of Plaintiff and his internal notes; however, while the Commissioner pointed to specific evidence in support of his argument, the ALJ failed to articulate the specific evidence she relied upon when she determined Dr. Day's opinion should not be given substantial weight. Thus, although Commissioner may have a colorful argument, it is unclear what evidence the ALJ relied upon when discrediting Dr. Day's assessment.  As such, the ALJ erred when she failed to adequately articulate what evidence she relied upon in her decision to discredit Dr. Day.

testimony by stating, "[t]he undersigned finds that neither the severity of her impairments nor the extent of her limitations is supported by the objective medical evidence of record." (Tr. 30-31).   Plaintiff argues the ALJ's reasoning for discrediting Plaintiff's testimony does not meet the requirement under the law that the ALJ must articulate explicit and adequate reasons for rejecting Plaintiffs allegations of pain.  (Doc. 13, pp. 14-15).  The Commissioner responds that the ALJ's analysis concerning Plaintiff's credibility should not be taken out of context from the preceding four pages in which the ALJ conducted an exhaustive analysis of all of the medical evidence.  (Doc. 14, p. 10).

The ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § § 404.1528, 416.929.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, 67 F.3d at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)).

Even if "the ALJ does not cite or refer to the language of the three-part test," the pain standard is properly addressed when the ALJ's "findings and discussions indicate that the standard was applied."  Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir.

2002).   In the instant case, even though the ALJ did not explicitly mention the three-part

pain standard, the Court concludes the ALJ's findings and discussions indicate she

applied it.  This is obvious from the ALJ's findings that Plaintiff has medically-

determinable impairments, and that "neither the severity of [Plaintiff's] impairments nor

the extent of her limitations is supported by the objective medical evidence of record."

(Tr. 31).

When the ALJ determines Plaintiff's "statements about the intensity, persistence,

or functionally limiting effects of pain or other symptoms are not substantiated by

objective medical evidence," the ALJ "must make a finding on the credibility of the

individual's statements based on a consideration of the entire case record."  SSR 96-7P.

Moreover, once the ALJ makes the decision to discredit Plaintiff's testimony because it is

not substantiated by the medical evidence, the ALJ is required to provide "explicit and

adequate reasons" justifying her decision.  Cannon v. Bowen, 858 F. 2ed 1541, 1545

(11th Cir. 1988) (internal citations omitted).

Here, in much the same way she discredited Dr. Day's testimony, the ALJ simply

determined Plaintiff's testimony was not substantiated by the record without articulating

any specific explanation.  Contrary to the Commissioner's argument that the Court

should consider the ALJ's entire analysis of the medical evidence as support for

discrediting Plaintiff's pain, the Court finds the ALJ failed to mention the specific

evidence she rejected and thus, the Court is unable to discern what evidence the ALJ

credited, discredited, or simply ignored.  As such, on remand the ALJ shall reconsider

Plaintiff's testimony in light of all of the evidence, and upon assessing Plaintiff's

credibility, the ALJ shall explicitly articulate her reasoning for accepting or rejecting

18

Plaintiff's testimony.

### 3.    Whether the ALJ erred in Assessing Plaintiff's RFC

Finally, Plaintiff argues the ALJ erred by failing to follow Social Security Ruling ("SSR") 96-8p which requires a narrative discussion describing how the evidence supports the ALJ's conclusions leading to her RFC assessment.  (Doc. 13, pp. 16-18). Specifically, Plaintiff states SSR 96-8p requires the ALJ to consider all limitations, even the ones found not to be severe, and further requires the ALJ to include a discussion of why Plaintiff's reported symptom related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence. Id. at 17.

Plaintiff notes the ALJ erred by failing to provide her rationale or specify which evidence she relied upon when assessing Plaintiff's RFC. Id. Plaintiff also contends the ALJ failed to provide the function-by-function analysis required by SSR 96-8p. Id. Plaintiff notes that the ALJ found Plaintiff's non-severe anxiety results in mild restrictions of Plaintiff's daily activities and social functioning, but she failed to discuss whether she considered Plaintiff's anxiety in assessing Plaintiff's RFC. Id. Additionally, Plaintiff argues the ALJ also failed to discuss whether she considered Plaintiff's mild deficiencies in concentration and persistence in the RFC, despite the fact she determined they existed. Id. at 17-18. The Commissioner responds the ALJ provided an extensive review of all of the medical evidence and clearly identified which evidence she relied upon and which she rejected.  (Doc. 14, p. 15).

In light of the fact this Court has already determined remand is necessary because the ALJ failed to adequately explain her reasoning for rejecting both Plaintiff's

19

treating physician's testimony and Plaintiff's own testimony, the Court finds the ALJ should reassess Plaintiff's RFC once she has fully reconsidered the medical evidence and has articulated what evidence she relies upon as credible and what evidence she rejects.  Moreover, in reassessing Plaintiff's RFC, the ALJ should take caution to explain in detail the specific evidence supporting her assessment.

## IV.   CONCLUSION

For the foregoing reasons, the undersigned finds the ALJ's decision is not supported by substantial evidence and is not based upon the proper legal standards. Accordingly, it is hereby

**ORDERED**:

The Commissioner's decision is hereby **REVERSED** and **REMANDED** pursuant to sentence four, 42 U.S.C. 405(g).  Upon remand, the ALJ shall (1) reconsider Dr. Day's opinion, and in the event the ALJ finds Dr. Day's opinion is not entitled to substantial weight, she should clearly articulate specific reasons as to how the evidence conflicts or fails to bolster such opinion, or how Dr. Day's opinion is inconsistent with his own medical records; (2) reconsider Plaintiff's testimony in light of all of the evidence, and explicitly articulate her reasons for accepting or rejecting Plaintiff's testimony; and (3) reassess Plaintiff's RFC, making sure to explain in detail the specific evidence supporting her assessment.  Finally, the ALJ may conduct any further proceedings she finds necessary in light of any new findings.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE AND ENTERED** at Jacksonville, Florida, this  22nd  day of August, 2007.

_Monte C. Richardson_

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

21